Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 85**

**No. 16SA230, <u>Frazier v. Williams</u>—Election Proceedings Under Section 1-1-113—42 U.S.C. § 1983—Supremacy Clause.**

The supreme court holds that claims brought under § 1-1-113, C.R.S. (2017), are limited to those alleging a breach or neglect of duty or other wrongful act under the Colorado Election Code. The language of section 1-1-113 limits claims that may be brought to those alleging a breach or neglect of duty or other wrongful act under "this code," meaning the Colorado Election Code. The court emphasizes that Colorado courts remain entirely open for adjudication of 42 U.S.C. § 1983 (2012) claims, including on an expedited basis if a preliminary injunction is sought, and that therefore section 1-1-113 does not run afoul of the Supremacy Clause. To the extent that <u>Brown v. Davidson</u>, 192 P.3d 415 (Colo. App. 2006), holds to the contrary, it is overruled.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 85

### Supreme Court Case No. 16SA230

*Original Proceeding Pursuant to C.A.R. 21*

Denver County District Court Case No. 16CV31574

Honorable Elizabeth A. Starrs, Judge

### In Re

#### Petitioner:

Ryan Frazier,

v.

#### Respondent:

Wayne W. Williams, in his official capacity as Colorado Secretary of State.

### Rule Made Absolute

*en banc*

September 11, 2017

**Attorneys for Plaintiff:**
Klenda Gessler & Blue, LLC
Scott E. Gessler
Geoffrey N. Blue
  *Denver, Colorado*

**Attorneys for Defendant:**
Cynthia H. Coffman, Attorney General
Frederick R. Yarger, Solicitor General
Leeann Morrill, First Assistant Attorney General
Matthew D. Grove, Assistant Solicitor General
  *Denver, Colorado*

**Attorneys for Amici Curiae Libertarian Party of Colorado and Gordon Roy Butt**:
The Matthew C. Ferguson Law Firm, P.C.
Matthew C. Ferguson
Michelle K. Schindler
  *Aspen, Colorado*

**JUSTICE EID** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins the dissent.

¶1    Ryan Frazier sought to appear on the Republican primary ballot for United States Senate. After Secretary of State Wayne Williams determined that he had gathered insufficient signatures to appear on the ballot, Frazier challenged the Secretary's determination under § 1-1-113, C.R.S. (2017), arguing that the Secretary improperly invalidated hundreds of signatures that substantially complied with the Colorado Election Code. Within the section 1-1-113 proceeding, Frazier also brought a claim under 42 U.S.C. § 1983 (2012) arguing that certain Colorado statutes prohibiting non-resident circulators from gathering signatures violated the First Amendment. Frazier filed an accompanying request for attorney's fees as authorized by 42 U.S.C. § 1988 (2012), which allows the award of a "reasonable attorney's fee" to "the prevailing party" in an action to enforce civil rights under section 1983. 42 U.S.C. § 1988. The district court ruled that the Secretary had properly invalidated certain signatures such that Frazier could not appear on the primary ballot. Frazier appealed to this court. We accepted jurisdiction and remanded the case for reconsideration of a number of signatures under the appropriate standard. On remand, the district court found that additional signatures substantially complied with the code, providing Frazier with sufficient signatures to appear on the Republican primary ballot for United States Senate. No ruling was made on Frazier's section 1983 claim.

¶2    Frazier then sought attorney's fees pursuant to section 1988. The Secretary opposed the fee request, arguing that federal claims such as section 1983 may not be brought in summary proceedings under section 1-1-113. The district court disagreed. Relying on <u>Brown v. Davidson</u>, 192 P.3d 415 (Colo. App. 2006), and <u>Libertarian Party of</u>

Colorado v. Williams, No. 14CA2063 (Colo. App. Jan. 14, 2016), the companion case we review today, the court ruled that Colorado law permitted 1983 claims to be joined in section 1-1-113 proceedings. The court accordingly determined that Frazier was entitled to an award of attorney's fees. The Secretary filed a petition for a rule to show cause, which we issued.

¶3     The language of section 1-1-113 repeatedly refers to "this code," which is defined as the Colorado Election Code. § 1-1-101 et seq., C.R.S. (2017). We hold that where the language of section 1-1-113 allows a claim to be brought against an election official who has allegedly committed a "breach or neglect of duty or other wrongful act" under "this code," it is referring to a breach of duty or other wrongful action under the Colorado Election Code, not a section 1983 claim. § 1-1-113. We emphasize that Colorado courts remain entirely open for the adjudication of section 1983 claims, including on an expedited basis if a preliminary injunction is sought, and that therefore section 1-1-113 does not run afoul of the Supremacy Clause. To the extent that Brown v. Davidson holds to the contrary, it is overruled. Accordingly, we make our rule absolute and remand the case for further proceedings.

## I.

¶4     Frazier sought the Republican Party's nomination for United States Senate in the 2016 election. In order to have his name appear on the primary election ballot, Frazier was required by Colorado law to file a petition containing a certain number of valid signatures of registered Republican electors.

¶5 After submitting these signatures to the Colorado Secretary of State for an official determination of eligibility, Frazier was informed on April 28, 2016, that the Secretary had determined that the signatures he had submitted were insufficient to place his name on the ballot. The Secretary stated that the signatures were insufficient in a variety of ways, including that signatures had been gathered by non-resident circulators.

¶6 Frazier filed a petition with the district court protesting the Secretary's decision on May 2, 2016, within five days of notification as required by § 1-4-909(1.5), C.R.S. (2017). In his petition, Frazier asserted two claims for relief: first, he sought an order under section 1-1-113 stating that the disputed signatures should be accepted by the Secretary of State because he had substantially complied with the Colorado Election Code; and second, he brought a section 1983 claim contending, inter alia, that the Colorado election laws prohibiting non-resident circulators were unconstitutional under the First Amendment.[1] He sought attorney's fees under section 1988, which permits the recovery of attorney's fees in connection with a section 1983 claim. 42 U.S.C. § 1988.

---

[1] Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

¶7 The district court held a hearing the next morning, May 3. The district court issued its order on May 4, concluding that Frazier had gathered insufficient signatures to appear on the ballot. Frazier asked this court to review the district court's order on May 9, within three days of the issuance of the court's order terminating proceedings, as required by section 1-1-113(3). This court accepted jurisdiction and concluded by order dated May 24 that Frazier had substantially complied with respect to a number of disputed signatures, and remanded the case for reconsideration of many other signatures under the standard mandated by the Colorado Election Code. After a telephonic hearing on May 25, the district court concluded that Frazier had enough signatures to qualify for the ballot, and ordered the Secretary to place Frazier on the Republican primary ballot for United States Senate. Frazier's section 1983 claim was not addressed in any of the above proceedings.

¶8 Frazier then sought to collect attorney's fees under section 1988 as a prevailing party. The Secretary opposed the fee request, arguing that federal claims such as section 1983 may not be brought in a section 1-1-113 proceeding. The district court disagreed, noting that it was bound by two court of appeals precedents, Brown v. Davidson, and Libertarian Party of Colorado v. Williams, the companion case we review today, both reading section 1-1-113 to permit joinder of section 1983 claims. As such, it rejected the Secretary's argument and applied the test set forth in Brown v. Davidson, eventually finding that Frazier was entitled to an award of attorney's fees.

¶9 The Secretary then challenged the district court's decision under C.A.R. 21 and section 1-1-113, asking us to consider whether section 1983 claims could be brought in a

5

section 1-1-113 proceeding and, if so, whether special circumstances exist making an attorney's fee award unjust in this instance. We treated the petition as one brought under Rule 21, and issued a rule to show cause.

¶10 We now make the rule absolute. We hold that claims brought pursuant to section 1-1-113 are limited to those alleging a breach or neglect of duty or other wrongful act under the Colorado Election Code.[2] We emphasize that Colorado courts remain entirely open for adjudication of section 1983 claims, including on an expedited basis if a preliminary injunction is sought, and that therefore section 1-1-113 does not run afoul of the Supremacy Clause. To the extent that Brown v. Davidson holds to the contrary, it is overruled. Accordingly, we make our rule absolute and remand the case for further proceedings.

## II.

¶11 Given the tight deadlines for conducting elections, section 1-1-113 is a summary proceeding designed to quickly resolve challenges brought by electors, candidates, and other designated plaintiffs against state election officials prior to election day. Both parties agree that such proceedings generally move at a breakneck pace. Here, for example, Frazier filed his petition challenging the Secretary's decision that his signatures were insufficient on May 2, 2016, within five days of notice of decision as required by section 1-4-909(1.5). The district court held a hearing the next morning and

---

[2] Because we conclude that section 1-1-113 proceedings are limited to "breach or neglect of duty or other wrongful acts" under the Colorado Election Code, we need not consider the Secretary's alternative argument regarding whether the attorney's fee award should be set aside. § 1-1-113.

issued an order the day after the hearing, agreeing with the Secretary that certain signatures collected in congressional district three were invalid. As a result, Frazier lacked sufficient signatures to be a candidate in the Republican primary. Frazier then sought review with this court within three days, as required by section 1-1-113(3), and we accepted jurisdiction. We remanded the case on May 24, ordering the district court to accept certain signatures and to reconsider others under the appropriate standard. The district court ordered that Frazier be placed on the ballot on May 25. Frazier's section 1983 claim was never addressed.

¶12 The Secretary argues that the language of section 1-1-113 limits the claims that can be brought to those alleging a breach or neglect of duty or other wrongful act under the Colorado Election Code. We agree.

¶13 Section 1-1-113 provides that:

> When any controversy arises between any official charged with any duty or function <u>under this code</u> and any candidate, or any officers or representatives of a political party, or any persons who have made nominations or when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty <u>under this code</u> has committed or is about to commit a breach or neglect of duty or other wrongful act . . . upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of <u>this code</u>.

§ 1-1-113(1) (emphasis added). We conclude that when section 1-1-113 repeatedly refers to "this code," it is plainly referring to the Colorado Election Code. <u>See</u> § 1-1-101 (defining "this code" as the "Uniform Election Code of 1992"). Indeed, Frazier does not propose an alternate meaning for the phrase "this code." Therefore, when section 1-1-113 refers to a verified petition brought against "any official charged with any duty

7

or function under this code," it is specifying who the proper defendant in a section 1-1-113 action may be—namely, an official charged with carrying out duties under the Colorado Election Code. Id. As for grounds, the petition must allege that the official "committed . . . a breach or neglect of duty or other wrongful act." Id. And finally, the section specifies the available remedy: "upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of this code" —that is, the Colorado Election Code. Id.

¶14     Frazier focuses on the statutory language specifying that a petition must allege that the official "committed . . . a breach or neglect of duty or other wrongful act." Id. According to Frazier, the legislature could have simply stated that the petition must allege a breach or neglect of duty, but instead included "or other wrongful act," which, he continues, expands the coverage of a section 1-1-113 proceeding to include section 1983 claims. We are not persuaded.

¶15     To start, Frazier's argument ignores the preceding portion of the language referring to "a person charged with a duty under this code [who] has committed . . . a breach or neglect of duty or other wrongful act." Id. (emphasis added). Read together, the second portion of the sentence most naturally refers to "a breach or neglect of duty or other wrongful act" under the Colorado Election Code, which does not include section 1983.

¶16     Moreover, Frazier's argument simply proves too much. Under Frazier's reasoning, the breach or neglect of duty or "other wrongful act" need not have any connection to the Colorado Election Code. Therefore, an accelerated section 1-1-113

8

proceeding could be invoked by allegations of any wrongful act by the election official—for example, that she committed a tort against a neighbor—where the neighbor happened to be an "eligible elector" (or other proper plaintiff) under section 1-1-113. Frazier offers no limiting principle for the "other wrongful act" language that would permit section 1983 claims to be alleged in a section 1-1-113 proceeding, but not torts generally or other claims. As noted above, the limiting principle that most naturally comports with the language is that "other wrongful act" refers to acts that are wrongful under the Election Code. To be sure, as Frazier points out, "other wrongful act" is more expansive than a "breach" or "neglect of duty." But all three grounds for a section 1-1-113 claim—that is, breach of duty, neglect of duty, or other wrongful act—all refer to acts that are inconsistent with the Election Code.

¶17     Even if that were not the case, the last sentence of section 1-1-113 makes clear that section 1983 claims cannot be adjudicated through section 1-1-113 proceedings. The last sentence provides the remedy available in a section 1-1-113 proceeding, namely, that "upon a finding of good cause, the district court shall issue <u>an order requiring substantial compliance with the provisions of this code</u>." <u>Id.</u> (emphasis added). Thus, the remedy available at the end of a section 1-1-113 proceeding is limited to an order, upon the finding of good cause shown, that the provisions of the Colorado Election Code have been, or must be, substantially complied with. <u>Carson v. Reiner</u>, 2016 CO 38, ¶ 15, 370 P.3d 1137, 1141. We see no authority for the proposition that "substantial compliance" upon the finding of "good cause" is a proper standard under

9

section 1983, and Frazier does not point us to any.  Instead, such a standard is only appropriate with regard to "this code" — that is, the Colorado Election Code.

¶18    Further inconsistencies between section 1983 and a section 1-1-113 proceeding reinforce the conclusion that the former cannot be raised in the latter.  For example, section 1-1-113 limits appellate review.  Within three days of the termination of the district court proceedings, the plaintiff must file for review with this court.  § 1-1-113(3). If this court "declines to review the proceedings, the decision of the district court shall be final and not subject to further appellate review."  Id.  Section 1983 contains no similar limitation on appellate review.  Similarly, section 1983 allows "any citizen of the United States or other person within the jurisdiction thereof" to bring a claim.  42 U.S.C. § 1983.  Section 1-1-113, by contrast, limits those who may file a verified petition to "any candidate, or any officers or representatives of a political party, or any persons who have made nominations or . . . any eligible elector."  § 1-1-113.  Again, given the substantial inconsistences between section 1983 and section 1-1-113 proceedings, section 1-1-113 does not provide an appropriate procedure for adjudicating section 1983 claims.[3]

---

[3] We note that the Secretary and Frazier disagree as to whether, as a practical matter, section 1983 claims can possibly be adjudicated under the accelerated timelines applicable to section 1-1-113 proceedings.  The Secretary says no, arguing that it is impossible to fully litigate a complex constitutional issue within days or weeks, as is typical of a section 1-1-113 proceeding.  Frazier argues that it can be done, and points to other cases in which it allegedly has been done.  We need not resolve this question, however, because we conclude that section 1983 claims cannot be brought in a section 1-1-113 proceeding under the language of the provision.

¶19     Additionally, we agree with the Secretary that bifurcation of the section 1983 and section 1-1-113 claims under C.R.C.P. 42(b), as was done in the companion case we issue today, <u>Williams v. Libertarian Party</u>, 2017 CO 86, ___ P.3d ___, is not the appropriate remedy.  Rule 42(b) allows a court to "order a separate trial of any separate issue or . . . claim[]" if doing so would further "convenience," "avoid prejudice," or serve the interests of "expedition or economy."  C.R.C.P. 42(b).   A bifurcation, however, would still allow a section 1983 claim—though adjudicated in a separate trial—to be brought in a section 1-1-113 proceeding in contravention of the statutory language.    When a section 1983 claim is brought in a section 1-1-113 proceeding, the district court should dismiss the claim without prejudice with leave to refile it in a separate action, which should then be assigned, where possible, to the same judge.

¶20     Lastly, Frazier contends that the Supremacy Clause requires Colorado district courts to include section 1983 claims in section 1-1-113 proceedings.   Again, we disagree.

¶21     Frazier cites <u>Felder v. Casey</u>, 487 U.S. 131 (1988), <u>Board of County Commissioners v. Sundheim</u>, 926 P.2d 545 (Colo. 1996), and <u>Espinoza v. O'Dell</u>, 633 P.2d 455 (Colo. 1981), for the proposition that the district courts must allow section 1983 claims to be brought within a section 1-1-113 proceeding.  These cases do not require that litigants be afforded the option to bring section 1983 suits in summary state proceedings.  Rather, they stand for an entirely different proposition—namely, that certain state-law limitations cannot set limits on the section 1983 remedy.

11

¶22 For example, in Felder, the Wisconsin Supreme Court held that section 1983 plaintiffs were required to comply with the state's notice-of-claim statute, which mandated that plaintiffs inform government defendants, inter alia, of the basis of their claims within 120 days of the alleged injury; failure to do so would result in dismissal of the claims. Felder, 487 U.S. at 134. The Supreme Court reversed, concluding that the notice-of-claim statute was inconsistent with section 1983's remedial objectives and therefore preempted under the Supremacy Clause. Id. at 153. Similarly, in Sundheim, we relied on Felder and held that the 30-day filing deadline for review of a quasi-judicial decision under C.R.C.P. 106(b) could not be applied to a section 1983 claim. Sundheim, 916 P.2d at 548–49. Finally, in Espinoza, a case that preceded Felder and Sundheim but applied similar reasoning, we held that the damage limitations of the state wrongful death statute could not be applied to limit the damages available in a section 1983 claim. Espinoza, 633 P.2d at 464–65.

¶23 Our decision today in no way imposes a limitation on a person's rights as set forth in section 1983. The courts of this state remain entirely open to section 1983 claims, even (and perhaps especially) where expedited review is sought in the form of a preliminary injunction.

¶24 Indeed, if this court were to hold, as urged by Frazier, that section 1983 could be brought in a section 1-1-113 proceeding, we would run afoul of the Supremacy Clause principles enshrined by Felder, Sundheim, and Espinoza. Under these cases, section 1983 claims cannot be subject to the kind of state-law limitations that section 1-1-113 would impose, such as truncated appellate review, limitation on proper plaintiffs, and a

12

standard of "substantial compliance" upon a showing of "good cause." § 1-1-113. We know of no authority suggesting we should allow section 1983 claims to be litigated in a special statutory proceeding that is inconsistent with section 1983 in many ways simply because the plaintiff is willing to subject himself to the limitations of the proceeding (as Frazier apparently is) if he can simultaneously take advantage of what he views as its benefits.

¶25      If anything, a more recent Supreme Court case discussed by the parties, Haywood v. Drown, 556 U.S. 729 (2009), indicates that section 1983 claims should not be shoehorned into specialized judicial proceedings that limit the federal right. In Haywood, a state law required inmates to file suits seeking money damages against correctional officers under state or federal law (including section 1983) in a specialty court that operated under significant procedural and substantive limitations, and required state courts of general jurisdiction to dismiss such claims. Id. at 734. The Court held that the state law violated the Supremacy Clause because the plaintiff was prevented from pursuing his section 1983 claim in a state court of general jurisdiction. Id. at 740. According to the Court, the state law was not a "neutral rule of judicial administration," see id. at 736–38 (citing Howlett v. Rose, 496 U.S. 356, 371 (1990)), but instead was a decision by the state "to shut the courthouse door to federal claims that it considers at odds with its local policy." Id. at 740. As applied here, our interpretation of section 1-1-113 has not "shut the courthouse door" to section 1983 claims. That door

13

remains wide open.[4] Instead, we have avoided the Supremacy Clause problem identified in Haywood that would arise if we were to subject section 1983 claims to the limitations of section 1-1-113.

¶26 In fact, Frazier's interpretation of section 1-1-113 is further in tension with the Supremacy Clause and Haywood given section 1-1-113's mandatory joinder rule. Under section 1-1-113, "the procedure specified in this section shall be the exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election." § 1-1-113(4) (emphasis added). Under Frazier's interpretation, plaintiffs would be obligated to bring related section 1983 claims within a section 1-1-113 proceeding. Mandating joinder of section 1983 claims in specialized election proceedings that place limits on available remedies and appellate review is to require what the Supremacy Clause condemns.

¶27 As a final note, Frazier argues that for many years various Secretaries of State have not objected to, and in some cases encouraged, plaintiffs to bring section 1983 claims in section 1-1-113 proceedings. Frazier also points out that this court has addressed a section 1983 claim in the context of a section 1-1-113 proceeding without objection from the prior officeholder. See Colo. Libertarian Party v. Sec'y of State, 817 P.2d 998 (Colo. 1991). But Frazier concedes, as he must, that we have never addressed

---

[4] Because the courts of Colorado remain entirely open to section 1983 claims under our interpretation of section 1-1-113, we need not consider whether section 1-1-113 is a "neutral rule of judicial administration" that would justify divesting Colorado courts of jurisdiction over section 1983 claims.

the question we examine today—namely, whether such joinder is appropriate under section 1-1-113. Squarely addressing the issue for the first time, we conclude, for the reasons stated above, that section 1983 claims cannot be brought in section 1-1-113 proceedings. To the extent that <u>Brown v. Davidson</u> holds to the contrary, we overrule it.[5] Because a section 1983 claim cannot be brought in a section 1-1-113 proceeding, Frazier could not seek fees under section 1988 in the context of a section 1-1-113 claim. Therefore, the attorney's fee award associated with Frazier's section 1983 claim cannot stand.

### III.

¶28     For these reasons, we make our rule to show cause absolute and remand the case for further proceedings consistent with this opinion.

**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins the dissent.

---

[5] In addition to <u>Brown</u>, the district court in this case relied on <u>Williams v. Libertarian Party</u>, the companion case we review, and reverse, today.

JUSTICE GABRIEL, dissenting.

¶29    After Colorado Secretary of State Wayne Williams (the "Secretary") concluded that plaintiff Ryan Frazier did not obtain a sufficient number of petition signatures to qualify to be placed on the ballot for the Republican primary as a candidate for the United States Senate, Frazier brought the current lawsuit, asserting claims under § 1-1-113, C.R.S. (2016), and 42 U.S.C. § 1983 (2012).  After an appeal to this Court and a remand to the district court, the district court ruled in Frazier's favor on the section 1-1-113 claims and did not reach the section 1983 claims.  Frazier then sought attorney fees under 42 U.S.C. § 1988 (2012), as the prevailing party on his section 1983 claims, which, he claimed, were intertwined with his section 1-1-113 claims.  The district court awarded Frazier fees, and the Secretary appealed, arguing, as pertinent here, that a section 1983 claim may not be joined with a section 1-1-113 claim in a single action because section 1-1-113 establishes a narrow proceeding limited solely to claims brought under the Colorado Election Code.

¶30    The majority agrees with the Secretary's construction and concludes that (1) claims brought pursuant to section 1-1-113 are limited to those alleging a breach or neglect of duty or other wrongful act under the Colorado Election Code and therefore, (2) section 1983 claims may not be joined in a section 1-1-113 proceeding.  See maj. op. ¶¶ 10, 18.  In support of these conclusions, the majority principally relies on the text of section 1-1-113 (most notably, the text's references to "this code") and the fact that the section provides for expedited appellate procedures.  See id. at ¶¶ 13–18.

1

¶31    Unlike the majority, I perceive nothing in the text of section 1-1-113 that precludes joinder of a section 1983 claim. To the contrary, in my view, the statutory text directly supports the joinder of such claims. Moreover, precluding joinder would mandate the filing of multiple lawsuits in direct contravention of both the applicable rules of civil procedure and Congress's intent to facilitate the filing of viable section 1983 claims.

¶32    Nor am I persuaded by the fact that section 1-1-113 provides for certain expedited procedures. We have never relied on the existence of such procedures to preclude joinder, and our courts have had no difficulty managing appeals in cases like this one.

¶33    Accordingly, I respectfully dissent.

## I. Analysis

¶34    I begin by addressing the applicable standard of review and rules of statutory construction. I then discuss the text of section 1-1-113 and explain why, in my view, the text of that statute, settled rules of civil procedure, and sound public policy support allowing the joinder of section 1983 claims with section 1-1-113 claims. Thereafter, I address section 1-1-113's expedited procedures for appeal and show why those procedures should not preclude joinder of section 1983 claims. I conclude with a comment on attorney fees, which appear to have been a significant factor motivating the Secretary's effort to preclude joinder of section 1983 claims in section 1-1-113 proceedings.

## A. Standard of Review and Rules of Statutory Construction

¶35 We review questions of statutory interpretation de novo. <u>Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.</u>, 2017 CO 69, ¶ 16, 395 P.3d 788, 792. In doing so, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings. <u>Id.</u> When the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction. <u>See</u> <u>id.</u> In addition, when construing a statute, we must respect the legislature's choice of language. <u>Turbyne v. People</u>, 151 P.3d 563, 568 (Colo. 2007). Accordingly, "[w]e do not add words to the statute or subtract words from it." <u>Id.</u> at 567.

## B. Section 1-1-113

¶36 Section 1-1-113 provides, in pertinent part:

(1) When <u>any controversy arises between any official charged with any duty or function under this code and any candidate</u>, . . . or when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty under this code has committed or is about to commit a breach or neglect of duty or other wrongful act, after notice to the official which includes an opportunity to be heard, upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of this code. The order shall require the person charged to forthwith perform the duty or to desist from the wrongful act or to forthwith show cause why the order should not be obeyed. The burden of proof is on the petitioner.

. . . .

(4) Except as otherwise provided in this part 1, <u>the procedure specified in this section shall be the exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election.</u>

3

(Emphasis added.)

¶37 Although the majority focuses to a large extent on the statute's references to "this code," maj. op. ¶ 13, it pays less attention to the broad language with which the statute begins and that appears throughout the statutory text. For example, the statute starts by referring to "any controversy between any official charged with any duty or function under this code and any candidate." § 1-1-113(1). In my view, this language is plain and unambiguous. It subsumes any controversy between an election official and a candidate relating to the official's duties or functions under the Election Code, and it does not limit such controversies to the nature of the claims asserted.

¶38 This interpretation is further supported by subsection (4), which states that the procedures set forth in section 1-1-113 constitute the "exclusive method" for adjudicating controversies arising from an alleged breach or neglect of duty "or other wrongful act that occurs prior to the day of an election." To me, "exclusive method" suggests that all disputes between an election official and a candidate arising from the official's duties under the Code must be brought in a single proceeding under section 1-1-113. Moreover, the phrase "other wrongful act that occurs prior to the day of an election" plainly encompasses claims beyond those for violations of the Election Code.

¶39 This does not mean, however, that the types of claims that can be brought in a section 1-1-113 proceeding are unlimited. To the contrary, as I read that provision, the claim must arise from the election official's performance of his or her statutory duties. And with that understanding, I have no difficulty concluding that Frazier's section 1983 claim fell within the proper bounds of a section 1-1-113 proceeding. Specifically, as the

4

majority correctly observes, in Frazier's section 1983 claim, he argued that the Colorado election laws prohibiting non-resident circulators were unconstitutional under the First Amendment. This claim was directly pertinent to the Secretary's statutory duty to determine whether a candidate had submitted sufficient signatures to qualify for the ballot: the Secretary had rejected the signatures gathered by Frazier circulator James Day, after Day's voter registration had expired, because Colorado election laws required circulators to be registered electors at the time the petition was circulated. Accordingly, Frazier's section 1983 claim reflected a controversy arising from the Secretary's performance of his statutory duties in conducting the election at issue, and this is precisely the type of claim contemplated by section 1-1-113.

¶40 In reaching a contrary conclusion, the majority reads section 1-1-113 to apply only to controversies between election officials and candidates involving breaches of duties and wrongful acts under the Colorado Election Code. But that is not what the statute says. As noted above, the statute refers to "any controversy between any official charged with any duty or function under this code and any candidate" and to "controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election." § 1-1-113(1), (4). In my view, the majority's interpretation reads into the statute a limitation—"under the Colorado Election Code"—that does not appear in the statute's plain text. As noted above, however, we do not add words to a statute. See Turbyne, 151 P.3d at 567.

¶41 Nor am I persuaded by the majority's reliance on section 1-1-113(1)'s requirement that, on finding a violation, the district court "shall issue an order

5

requiring substantial compliance with the provisions of this code." Maj. op. ¶ 17. I perceive nothing in that language that is inconsistent with the remedies that may be imposed under section 1983. Nor does the fact that section 1983 may allow additional remedies suggest to me that section 1-1-113 precludes joinder of a section 1983 claim.

¶42 Accordingly, based on the plain and unambiguous language of section 1-1-113, I would conclude that the joinder of section 1983 claims with section 1-1-113 claims is appropriate. Indeed, a contrary rule strikes me as inconsistent with the Colorado Rules of Civil Procedure, with settled public policy, and with Congress's intent to facilitate the filing of viable section 1983 claims.

¶43 Specifically, C.R.C.P. 1(a) provides, in pertinent part, that our rules of civil procedure "shall be liberally construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action."

¶44 C.R.C.P. 18(a), in turn, provides, "A party asserting a claim to relief as an original claim, counterclaim, cross claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party."

¶45 The purpose of these rules is to allow parties to present their claims in a speedy and expeditious way and, in particular, to avoid requiring a party to file—and the opposing party to defend—multiple proceedings arising from the same transaction. See, e.g., CLPF-Parkridge One, L.P. v. Harwell Invs., Inc., 105 P.3d 658, 662 (Colo. 2005) (noting that the civil procedure rules are designed to avoid "extensive seasons of fractured litigation" and that the rules "promote expeditious resolution of all disputes

6

arising out of the same transaction in a single lawsuit"); <u>Benton v. Adams</u>, 56 P.3d 81, 85 (Colo. 2002) (noting that the purpose of the civil procedure rules is to secure a just, speedy, and inexpensive determination of every action and that the focus is on the resolution of actions on their merits in a reasonable and expeditious manner). Indeed, for the same reason, we have long construed rules of claim preclusion as barring not only claims that were actually litigated but also claims that could have been litigated in a prior proceeding. <u>See</u> <u>Meridian Serv. Metro. Dist. v. Ground Water Comm'n</u>, 2015 CO 64, ¶ 36, 361 P.3d 392, 398.

¶46 Notwithstanding the foregoing, in this case, the majority adopts a new rule precluding joinder of section 1983 claims and <u>mandating</u> that such claims be asserted in a separate proceeding. <u>See</u> maj. op. ¶ 19 (stating that when a section 1983 claim is brought in a section 1-1-113 proceeding, the district court should dismiss the claim without prejudice with leave to refile it in a separate action). For the reasons set forth above, I perceive no basis for construing section 1-1-113 as creating so unique a rule, and one that seems so squarely to conflict with the civil procedure rules noted above. And this is particularly true here, given Congress's long-established intent to facilitate the filing of viable section 1983 claims.

¶47 Specifically, over thirty years ago, the Supreme Court made clear that the very reason fees are awarded in section 1983 cases is to <u>encourage</u> competent counsel to pursue such cases to vindicate the rights of parties whose constitutional rights have been violated but who otherwise would lack the financial means to seek an appropriate remedy to protect those rights. <u>See</u> <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 576–78

(1986). Requiring a civil rights litigant like Frazier to file a second lawsuit to protect his constitutional rights would serve no purpose other than to increase the time and expense of Frazier's claims. This, in turn, would tend to <u>discourage</u> the pursuit of such a claim, contrary to Congress's expressed intent.

¶48 In interpreting section 1-1-113 as I do, I acknowledge and appreciate the Secretary's concerns regarding the possible breadth of a section 1983 claim and the potential need for substantial discovery on such a claim. Because Frazier's section 1983 claim presented strictly a legal question and was closely interrelated to Frazier's state law claims, however, no such discovery was necessary or at issue in this case. Moreover, thus far, cases in which section 1983 claims have been joined in section 1-1-113 proceedings do not appear to have presented any difficult discovery problems. And were such problems to arise, in my view, they would present a case management issue for the district court, not a reason to bar joinder of a possibly viable constitutional claim.

¶49 For all of these reasons, I believe that a party in Frazier's position may appropriately join a section 1983 claim with a section 1-1-113 claim.

## B. Appellate Considerations

¶50 To justify further its conclusion that section 1-1-113 precludes the joinder of section 1983 claims, the majority points to section 1-1-113's limits on appellate review. <u>See</u> maj. op. ¶ 18. I, however, do not believe that such limits warrant a rule precluding joinder of section 1983 claims.

¶51 Section 1-1-113(3) allows for expedited review in this court:

> The proceedings may be reviewed and finally adjudicated by the supreme court of this state, if either party makes application to the supreme court within three days after the district court proceedings are terminated, unless the supreme court, in its discretion, declines jurisdiction of the case. If the supreme court declines to review the proceedings, the decision of the district court shall be final and not subject to further appellate review.

¶52 I perceive nothing in this section that precludes the joinder of a section 1983 claim. In fact, and as Frazier correctly observes, joined section 1983 claims can—and have—been properly adjudicated (and appealed) within the context of section 1-1-113 proceedings. Indeed, Williams v. Libertarian Party, 2017 CO 86, ___ P.3d ___, which we are also deciding today, is an example of such a case. I am not aware of any intractable problems or confusion regarding the trial and appellate procedures to be employed in cases like this, and thus, I see no reason to overrule Brown v. Davidson, 192 P.3d 415 (Colo. App. 2006), which has been on the books for over a decade without apparent controversy or difficulty.

¶53 I am not persuaded otherwise by the majority's reliance on cases like Felder v. Casey, 487 U.S. 131, 144–45 (1988), Haywood v. Drown, 556 U.S. 729, 736–40 (2009), and their progeny. See maj. op. at ¶¶ 21–26. To the contrary, I believe that these cases support the joinder of section 1983 claims in a section 1-1-113 proceeding.

¶54 In Felder, 487 U.S. at 144–45, the Supreme Court concluded that section 1983 plaintiffs were not required to comply with a state notice-of-claim statute because the state law's protection applied solely to governmental defendants and thus "condition[ed] the right to bring suit against the very persons and entities Congress intended to subject to liability." In so concluding, the Court observed that a state law

9

that conditions a congressionally mandated right of recovery on compliance with a rule designed to minimize governmental liability and that directs injured persons to seek redress in the first instance from the targets of that federal legislation "is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law." Id. at 153.

¶55 In Haywood, 556 U.S. at 733–34, the Court considered a challenge to a New York law that (1) divested state courts of general jurisdiction of their jurisdiction over civil rights actions brought by state prisoners against corrections officers and (2) required that such actions be brought in a claims court of limited jurisdiction. This state law was motivated by the belief that such actions were largely frivolous and vexatious. Id. at 733. The Court struck down the law, holding that, "having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse doors to federal claims that it considers at odds with its local policy." Id. at 740.

¶56 In my view, these cases do not support the majority's assertion that Frazier's (and, implicitly, my) reading of section 1-1-113 would result in a Supremacy Clause violation. See maj. op. ¶ 26. Joinder of a section 1983 claim in a section 1-1-113 proceeding in no way limits or discriminates against a claimant's federal rights. Nor does it close a courthouse door to them. If anything, it enhances those rights by ensuring a prompt hearing and appellate process in a single court proceeding. In contrast, the majority's interpretation of section 1-1-113 would inevitably close the

10

courthouse door to viable section 1983 claims, which we cannot properly do. <u>See</u> <u>Haywood</u>, 556 U.S. at 740.

## C. Attorney Fees

¶57    Finally, I feel compelled to say a word about attorney fees, which appear to have been a significant factor motivating the Secretary's effort to preclude joinder of section 1983 cases in this context. <u>See</u> maj. op. ¶ 2 (noting that after Frazier sought attorney fees under section 1988, the Secretary opposed that request and argued that section 1983 claims may not be brought in a section 1-1-113 proceeding).

¶58    I have no doubt that some parties may well be motivated to assert section 1983 claims because those claims provide a potential avenue for the recovery of fees. Indeed, such an outcome is fully consistent with Congress's intent to promote viable section 1983 claims by awarding fees to prevailing parties. <u>See</u> <u>City of Riverside</u>, 477 U.S. at 576–78. Given this intent, I do not believe that it is appropriate to use the risk of fees as a basis for adopting novel procedures that will likely discourage litigants from asserting potentially viable section 1983 claims. Yet, that appears to be what we have done today.

## II. Conclusion

¶59    For these reasons, I believe that the plain language of section 1-1-113, the applicable civil procedure rules, and sound public policy support allowing a petitioner like Frazier to join section 1983 claims with claims under section 1-1-113.

¶60    Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE HOOD joins in this dissent.